IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>CRYSTAL LYNN JONES, f/k/a CRYSTAL LYNN GERINGER, n/k/a CRYSTAL LYNN BLAIR, JOHN LUKE JONES, TEEL'S USED TRUCKS, INC., and RUSH COUNTY, KANSAS,<br><br>                    Defendants. | Civil No. 20-4071 |

## COMPLAINT

COMES NOW the United States of America, by Stephen R. McAllister, United States Attorney for the District of Kansas, and Tanya Sue Wilson, Assistant United States Attorney, and for its cause of action alleges:

1. This is a civil action for judgment on the Promissory Note and foreclosure of the Mortgage brought by the United States of America under the provisions of 28 U.S.C. § 1345.

2. Service may be made upon the Defendants in the following manner:

    a. Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer and n/k/a Crystal Lynn Blair, may be served the Summons and a copy of the Complaint at 467 5th Street, Phillipsburg, KS 67661, within the jurisdiction of this Court.

    b. Defendant John Luke Jones may be served the Summons and a copy of the Complaint at 1134 5th Street, Phillipsburg, KS 67661, within the jurisdiction of this Court.

      c.      Defendant Teel's Used Trucks, Inc., whose business status is currently listed as forfeited with the Kansas Secretary of State, may be served by delivering the Summons and a copy of the Complaint and to the Kansas Secretary of State at Memorial Hall, 1st Floor, 120 SW 10th Avenue, Topeka, Kansas 66612, pursuant to K.S.A. § 60-304(f), within the jurisdiction of this Court.

      d.      Defendant Rush County, Kansas, may be served by delivering a copy of the Summons and Complaint to the Rush County Clerk, 715 Elm Street, La Crosse, Kansas 67548, pursuant to K.S.A. § 60-304(d)(1), within the jurisdiction of this Court.

3.      Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, and n/k/a Crystal Lynn Blair, executed and delivered to Plaintiff United States, acting through the United States Department of Agriculture, Rural Housing Service, a promissory note on July 27, 2007, in the principal amount of $63,000.00, together with interest at the rate of 5.7500 percent (5.7500%) per annum on the unpaid balance. As consideration for this note, Plaintiff United States made a Rural Housing Service loan to Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, and n/k/a Crystal Lynn Blair, pursuant to the provisions of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq*.). A true and correct copy of the Promissory Note is attached as Exhibit A.

4.      On July 27, 2007, to secure repayment of the indebtedness, Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, and n/k/a Crystal Lynn Blair, executed and delivered a purchase-money security interest in the form of a real estate mortgage upon real property commonly known as 411 West 8th Street, LaCrosse, Kansas, 67548, and located in Rush County, Kansas, within the jurisdiction of this Court, described as follows:

> The West Twenty-feet (W 20') of Lots One (1), Two (2), Three (3), Four (4) and Five (5) and the East Forty-five (E 45') of Lots Sixteen

>   (16), Seventeen (17), Eighteen (18), Nineteen (19) and Twenty (20)
>   in Krause & Newman's Addition to the City of LaCrosse, Rush
>   County, Kansas.

This real estate mortgage was filed on July 30, 2007, in the office of the Register of Deeds of Rush County, Kansas, in Book 73 of Mortgages at Pages 681-686. A true and correct copy of the Mortgage is attached as Exhibit B.

5. On July 27, 2007, Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, n/k/a Crystal Lynn Blair, executed a Credit Subsidy Agreement. The recapture of any and all amounts granted under this Agreement are secured by the Real Estate Mortgage described above pursuant to the Housing Act of 1949, as amended, 42 U.S.C. § 1490a, and the implementing regulations, 7 C.F.R. § 3550.162. As of October 8, 2020, there was due the total amount of $486.72. This amount is to be recovered *in rem* only, and only after recovery of the principal (including advances and other recoverable costs) and accrued interest due on the Promissory Note through the date of sale of the real property. A true and correct copy of the Subsidy Repayment Agreement is attached as Exhibit C.

6. Plaintiff United States is the owner and holder of the liability and security documents set out above, attached as Exhibits A, B and C.

7. Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer and n/k/a Crystal Lynn Blair, failed to pay installments of principal and interest when due in violation of the liability and security documents set out above. Plaintiff United States elected to exercise its option to declare the entire unpaid principal balance plus interest to be immediately due and payable and made demand for these amounts.

8. The amount due on the Promissory Note is principal in the amount of $61,351.10 (including unpaid principal of $50,261.10, escrow replenish of $3,534.95, agency title report fees

of $450.00, caretaker fees of $5,625.00, lead based paint of $750.00, escrow fees of $687.42, and late fees of $42.63) as of October 8, 2020; plus interest in the amount of $13,357.92 (including interest on principal of $12,628.95 and interest on advances of $728.97) accrued to October 8, 2020; plus interest accruing thereafter at the daily rate of $9.1017 (including daily interest on principal of $7.9178 and daily interest on advances of $1.1839) to the date of judgment; plus administrative costs of $305.00 (including lis pendens filing fee of $5.00 and a title report fee of $300.00) pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred. Plaintiff United States is also owed the amount of $486.72 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961; and foreclosure of all Defendants' interests in the subject real estate.

9. No other action has been brought to recover these sums.

10. Plaintiff United States completed all loan servicing requirements of Title V of the Housing Act of 1949 (42 U.S.C. § 1471, *et seq.*) and implementing rules and regulations.

11. The following Defendants may claim an interest in the real estate:

    a. Defendant John Luke Jones may claim an interest in the real property pursuant to the Journal Entry of Judgment and Decree of Divorce filed in the District Court of Rush County, Kansas, *In the Matter of the Marriage of: Crystal Jones and John Jones*, Case No. 15-DM-34, on July 14, 2016.

    b. Defendant Teel's Used Trucks, Inc. may claim an interest in the real property pursuant to the Abstract of Judgment Notice filed in the District

        Court of Rush County, Kansas, Case No. 2015-MV-02, on July 20, 2015, in the amount of $482,260.79.

   c.   Defendant Rush County, Kansas, may claim an interest in the real property pursuant to a personal property tax warrant filed in Rush County District Court, Case No. 2016-PT-1, against John Jones and Crystal Jones, in the amount of $84.77, plus additional interest that may apply.

   d.   The United States of America may claim an interest in the real property pursuant to a Notice of Lien filed in the office of the Rush County Register of Deeds Office on March 19, 2015, and recorded in Book 39 of Mortgages at Page 494, in the amount of $482,260.79.

   e.   The United States of America may claim an interest in the real property pursuant to the Abstract of Judgment filed in the office of the Rush County Register of Deeds Office on April 5, 2018, and recorded in Book 39 of Mortgages at Page 540, in the amount of $484, 260.79.

12. The indebtedness due Plaintiff United States on the real estate mortgage is a first and prior lien on the property described above.

13. The interests of all Defendants are junior and inferior to the interests of Plaintiff United States.

14. Less than one-third (1/3) of the original indebtedness secured by the mortgage of Plaintiff United States was paid prior to default.

Plaintiff United States demands *in rem* judgment of foreclosure and *in personam* judgment against Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, and n/k/a Crystal Lynn Blair, in the amount of $61,351.10 (including unpaid principal of $50,261.10, escrow replenish of

$3,534.95, agency title report fees of $450.00, caretaker fees of $5,625.00, lead based paint of $750.00, escrow fees of $687.42, and late fees of $42.63) as of October 8, 2020; plus interest in the amount of $13,357.92 (including interest on principal of $12,628.95 and interest on advances of $728.97) accrued to October 8, 2020; plus interest accruing thereafter at the daily rate of $9.1017 (including daily interest on principal of $7.9178 and daily interest on advances of $1.1839) to the date of judgment; plus administrative costs of $305.00 (including lis pendens filing fee of $5.00 and a title report fee of $300.00) pursuant to the promissory note and mortgage; plus filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2); plus interest thereafter at the rate set forth in 28 U.S.C. § 1961; plus court costs and the costs of this action presently and in the future incurred. Plaintiff further demands *in rem* judgment in the amount of $486.72 for interest credit or subsidy subject to recapture; plus interest after the date of judgment at the rate set forth in 28 U.S.C. § 1961.

Plaintiff United States further demands that its Mortgage be declared a first and prior lien on the real property and that such advances as Plaintiff United States may be authorized and required to pay for insurance premiums, real estate taxes, title fees, or other costs necessary to protect the security during the pendency of this proceeding be allowed as a first and prior lien on the security.

Plaintiff United States further demands that it be granted *in rem* judgment foreclosing its mortgage on the real property and foreclosing the interests of all Defendants, and that all right, title, and interest in and to the real property of all Defendants, and of all persons claiming by, through or under these Defendants be decreed to be junior and inferior to the Mortgage of the Plaintiff United States and be absolutely barred and foreclosed.

Plaintiff United States further demands that the real property be sold at public sale to the highest bidder, in accordance with 28 U.S.C. §§ 2001-2002, inclusive, subject to a redemption period not to exceed three (3) months, pursuant to the provisions of K.S.A. § 60-2414(m), and that the sale be subject to any unpaid real estate taxes, special assessments and easements of record.

Plaintiff United States further demands that it may bid up to the full amount due it at the time of the sale without paying funds into the Court, which bid shall satisfy the requirement for a cash sale, and that the sale proceeds be applied in the following order:

(1) Filing fees in the amount of $400.00 allowed pursuant to 28 U.S.C. § 2412(a)(2);

(2) The costs of this action and the foreclosure sale;

(3) The interest accruing on Plaintiff United States' *in personam* judgment against Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, n/k/a Crystal Lynn Blair;

(4) Plaintiff United States' *in personam* judgment against Defendant Crystal Lynn Jones, f/k/a Crystal Lynn Geringer, n/k/a Crystal Lynn Blair;

(5) The interest accruing on Plaintiff United States' *in rem* judgment for interest credit or subsidy subject to recapture;

(6) Plaintiff United States' *in rem* judgment for interest credit or subsidy subject to recapture; and,

(7) Any remaining balance should be held by the Clerk of the District Court to await the Court's further order.

Plaintiff United States further demands that the judgment granted it in the Order and Judgment be the final judgment of this Court.

Plaintiff United States further demands that in the event the judgment is not satisfied from the proceeds of the sale, that it be granted judgment against Defendant Crystal Lynn Jones, f/k/a

Crystal Lynn Geringer and n/k/a Crystal Lynn Blair, for any deficiency that exists after crediting the proceeds, together with interest accruing at the legal judgment rate until paid.

Plaintiff United States further demands that if the grantee named in the United States Marshal's Deed, or the grantee's assigns, are denied possession of the real property, a Writ of Assistance issue out of this Court to the United States Marshal for the District of Kansas, upon application of the grantee or grantee's assigns, ordering and directing the United States Marshal to place the applicant in full, complete, and peaceful possession of the real property.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney
District of Kansas

*s/ Tanya Sue Wilson*
TANYA SUE WILSON
Assistant United States Attorney
Ks. S.Ct. No. 11116
290 Federal Bldg.
444 SE Quincy Street
Topeka, Kansas 66683
PH: (785) 295-2850
FX: (785) 295-2853
Email: tanya.wilson@usdoj.gov
Attorneys for the Plaintiff

### REQUEST FOR PLACE OF TRIAL

Plaintiff United States of America hereby requests that trial of the above-entitled matter be held in the City of Topeka, Kansas.

*s/ Tanya Sue Wilson*
TANYA SUE WILSON
Assistant United States Attorney

Jones, Crystal L.

Form RD 1940-16  
(Rev. 7-05)

Form Approved  
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE**  
**RURAL HOUSING SERVICE**

**PROMISSORY NOTE**

Type of Loan   SECTION 502

**SATISFIED**

Loan No. _____

This _____ day of _____, 20 _____  
United States of America  
By: _____  
Title: _____  
USDA, Rural Housing Services

Date: ___07/27___ 20 _07_

411 W 8th St  
_____  
(Property Address)

La Crosse _____, Rush _____, KS _____  
(City or Town)        (County)        (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ _63,000.00_ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of ___5.7500___ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

   I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in __396__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

   II. Payments shall not be deferred. I agree to pay principal and interest in ___396___ installments as indicated in the box below.

| |
|---|
| I will pay principal and interest by making a payment every month. I will make my monthly payment on the __27th__ day of each month beginning on __August 27__, __2007__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __July 27__, _2040_, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date." My monthly payment will be $ _355.41_____. I will make my monthly payment at _the post office address noted on my billing statement_____ or a different place if required by the Government. |

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

Exhibit A

Account #

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of __15__ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal  
Borrower Crystal L Geringer

_____ Seal  
Borrower

_____ Seal  
Borrower

_____ Seal  
Borrower

| RECORD OF ADVANCES ||||||
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| TOTAL $ ||||||

3

MICROFILMED                                                                    681

**REGISTRATION FEE**

Amount of Indebtedness $ _____

Fee $ _____ No. _____

Paid this _____ day of _____ 20 _____

Register of Deeds, Rush County, Kansas

STATE OF KANSAS, RUSH COUNTY, S.S.
THIS INSTRUMENT WAS FILED FOR RECORD ON
THE 30 DAY OF Jul A.D.
20 07 AT 9 O'CLOCK A M., AND
DULY RECORDED IN BOOK 23 OF Mtg
AT PAGE 681

_____
REGISTER OF DEEDS

INDEXED G ✓   R ✓

#1129

Acct .

Form RD 3550-14 KS
(9-00)

(Space Above This Line For Recording Data)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KANSAS

THIS MORTGAGE ("Security Instrument") is made on     July 27     , 2007 . [Date]
The mortgagor is     Crystal L Geringer, a single person
                                                                         ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| July 27, 2007 | $63,000.00 | July 27, 2040 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of
         Rush                              , State of Kansas

   The West Twenty-feet (W 20') of Lots One (1), Two (2), Three (3), Four (4) and Five (5)
   and the East Forty-five (E 45') of Lots Sixteen (16), Seventeen (17), Eighteen (18),
   Nineteen (19) and Twenty (20) in KRAUSE & NEWMAN'S ADDITION to the City of
   LaCrosse, Rush County, Kansas

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number The valid OMB control number for this information collection is 0575-0172   The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Page 1 of 6

Exhibit B

682

which has the address of  411 W 8th St  LaCrosse
[Street]  [City]
Kansas  67548-9763
[ZIP]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note;

(3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make

repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred

(or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. **Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, disability, age or familial status.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other limitations, or (d) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower

expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights inchoate or consummate, of descent, dower and curtesy.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_____[SEAL]
Crystal L Geringer            Borrower

_____[SEAL]
                              Borrower

STATE OF KANSAS          } ss:      ACKNOWLEDGMENT
COUNTY OF  xRushxEllis   }

On this  27th  day of  July , 2007 , before me, _____

_____Debra A. Watts_____ personally appeared _____

_____Crystal L Geringer_____ and _____

who acknowledged that  she  executed the foregoing instrument as  her  voluntary act and deed.

[SEAL]

_____
Debra A. Watts, Notary Public

My appointment expires  7-22-2011

DEBRA A. WATTS
NOTARY PUBLIC
STATE OF KANSAS
My App. Exp. 7-22-2011

Page 6 of 6

Form RD 3550-12         **United States Department of Agriculture**         Form Approved
(Rev. 9-06)                                **Rural Housing Service**                    OMB No. 0575-0172

Account #

## SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but; payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Calculating Original Equity.

For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately furnished under the Self-Help program, an amended agreement using the market value definition for all other transactions as outlined below must be completed.

For all other transactions, the market value is the lower of the:

    Sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable
    OR
    Appraised value as determined at the time of loan approval/obligation.

If the applicant owns the building site free and clear or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value will be the lower of the appraised value or the construction cost plus the value of the site.

Market value of property located at:
411 W 8th St
La Crosse, KS 67548        $ 60,000.00

Less Prior Liens        $ _____ Held by _____
       $ _____ Held by _____

Less Subordinate Affordable Housing Products        $ _____ Held by _____
       $ _____ Held by _____

Less Rural Development Single Family Housing Loans        $ 63,000.00
Equals Original Equity (If negative number use "0")        $ 0.00

Percent of Original Equity        $ 0.00 %
(Determined by dividing original equity by the market value)

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Exhibit C

5.

| months loan outstanding | Average interest rate paid |||||||||
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59    | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119  | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up  | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

    Current Market value

LESS

    Original amount of prior liens and subordinate affordable housing products,
    RHS balance,
    Reasonable closing costs,
    Principal reduction at note rate,
    Original equity (see paragraph 3), and
    Capital improvements (see 7 CFR part 3550).

EQUALS

    Appreciation value. (If this is a positive value, continue.)

TIMES

    Percentage in paragraph 4 (if applicable),
    Percentage in paragraph 5, and
    Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS

    Value appreciation subject to recapture. Recapture due equals the lesser of this figure or
    the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower | *[signature]* | Date | 7/27/07 |
|---|---|---|---|
| Borrower | | Date | |